FILED

2025 Feb-12  AM 10:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| KAMILES CREWS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:23-cv-00863-MHH-SGC |
| | ) | |
| SGT. GASTON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Kamiles Crews initiated this matter by filing a *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. (Doc. 1).[1]   The complaint names four corrections officers at William E. Donaldson Correctional Facility: Lieutenant Brandon Mitchell, Officer Veronica Grace, Sergeant Darrick Gaston, and Officer Thaddeus Clarke.  (*Id.*; *see* Doc. 19 at 1-2; Doc. 26 at 1).  Each defendant is sued in his or her individual capacity, while the plaintiff checked a box indicating Mitchell was also sued in his official capacity. (Doc. 1 at 2-3).  The plaintiff seeks compensatory and punitive damages, as well as a referral for criminal prosecution and an order terminating Mitchell's and Grace's employment with the Alabama Department of Corrections ("ADOC").  (*Id.* at 8). This matter was referred to the undersigned magistrate judge for a preliminary report

---

[1] Citations to the record in this case refer to the document and page numbers assigned by the court's CM/ECF system and appear in the following format: Doc. __ at __.

and recommendation. *McCarthy v. Bronson*, 500 U.S. 136 (1991). Presently pending are the defendants' motions for summary judgment. (Docs. 19, 26, 27; *see* Doc. 30). As explained below, the motions are due to be denied in their entirety.

## I.    PROCEDURAL HISTORY

The claims in this matter arise from allegations of an unprovoked beating on June 11, 2023, and denial of medical care for the resulting injuries. On November 17, 2023, the undersigned entered an Order for Special Report, directing: (1) the Clerk of Court to forward copies of the complaint to the defendants; and (2) each defendant to file a special report addressing Crews's factual allegations. (Doc. 10). The order noted the special report could be submitted under oath or accompanied by affidavits and, if appropriate, would be considered as a motion for summary judgment under Rule 56 of the *Federal Rules of Civil Procedure*. (*Id.*). On February 23, 2024, Mitchell, Gaston, and Grace filed a special report, supplemented by affidavits and other evidence. (Doc. 19). Although defense counsel had appeared on behalf of all defendants, Clarke did not join in the special report.

The February 23, 2024 special report prompted two motions from Crews: (1) a motion styled as seeking default judgment against Clarke; and (2) a motion to produce his medical records and other video or photographic evidence. (Docs. 22-23). Regarding Clarke, the court ordered him to show cause why default should not be entered against him. (Doc. 25). In response, Clarke filed a special report

2

indicating he had recently returned from medical leave.  (Doc. 26 at 1; *see* Doc. 19 at 1).  The court also ordered the defendants to file a notice specifying whether any medical records, video, or photographic evidence existed and, if so, why it was not produced with the special report.  (Doc. 24).  The defendants responded with a supplemental special report supported by exhibits—the affidavit of ADOC supervisor Brian Casey and "relevant medical records."[2]  (Doc. 27).  Casey's affidavit states that an incident like the one alleged in the complaint normally would lead ADOC to generate various reports and other documents.  (Doc. 27-1 at 1-2).  Casey avers his search of ADOC records yielded no documentary evidence.  (*Id.*).  In a similar vein, counsel's supplement explained—in regard to the original special report—she did "not attach any documents because upon initial review of Plaintiff's Complaint and ADOC files, there was no evidence to support Plaintiff's claims."  (Doc. 27 at 1).

In light of the defendants' responses, the court termed the plaintiff's motions.  (Doc. 29).[3]  The court denied any attempt to strike Clarke's special report as untimely, noting his recent return from medical leave.  (*Id.*).  As to both motions, the court reasoned Crews would have an opportunity to respond to both Clarke's special

---

[2] It is unclear whether these records constitute all of the plaintiff's medical records or just the ones defense counsel now deems relevant to the claims presented here.

[3] To the extent the plaintiff is unsure of the import of the instruction to "term" the motions, it denied the relief requested.  (*See* Doc. 32 at 2).

report and the newly-filed medical records, removing any threat of prejudice to Crews. (*Id.*). On June 6, 2024, the undersigned notified the parties that the court would construe the special reports and supplement as motions for summary judgment. (Doc. 30). Crews responded by filing affidavits. (Doc. 31). This matter is now before the court on the defendants' motions for summary judgment.

## II.   STANDARD OF REVIEW

Because the court has construed the defendants' special reports as motions for summary judgment, Rule 56 governs. Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues of material fact and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Unless the plaintiff, who carries the ultimate burden of proving his action, can show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986);

4

*Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990).  As the Eleventh Circuit

has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case.  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted].  Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532.

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint

must be considered in opposition to summary judgment.  *See Caldwell v. Warden,*

*FCI Talladega,* 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*,

786 F.2d 1093, 1095 (11th Cir. 1986)).  Additionally, because the plaintiff is *pro se*,

the court must construe the complaint more liberally than it would pleadings drafted

by lawyers.  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).  A *pro se* pleading "is held to a

less stringent standard than a pleading drafted by an attorney" and is liberally

construed.  *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015).

## III.   FACTS

Crews is an inmate confined at the William E. Donaldson Correctional

Facility, which is where the alleged events giving rise to his claims occurred.  (Doc.

1 at 2, 5).  Because the defendants offer radically different facts than those alleged

by Crews, the parties' respective versions of events are set out in turn.

### A.   Crews's Allegations

In his sworn complaint and affidavits in response to the motions for summary judgment, Crews alleges that, on the morning of June 11, 2023, Grace escorted him to the population shift office, where the other defendants were gathered, along with Lieutenant Pugh, who is not named as a party.  Pugh asked whether Crews had disrespected a female officer on the night shift.  When Crews denied it, Grace accused him of lying and said she overheard Crews making threats.  Mitchell then hit Crews on the side of the head, grabbed him by the shirt, slammed him to the ground, and stomped on him for approximately 30 seconds.[4]  Pugh told Mitchell to stop, and Mitchell ordered Crews to his feet.  (Doc. 1 at 5; Doc. 31 at 1-2).

Next, Pugh asked Crews whether he had threatened Grace.  When Crews denied it, Grace hit him in the face and stomach, grabbed him by the back of the neck with both hands, and kneed him in the groin.  Pugh separated Grace and Crews, but the other officers sat by, watching the attack.  (Doc. 1 at 5-6; Doc. 31 at 2).

Following these assaults, Crews requested to go to the infirmary.  Mitchell denied the request, threatened to beat Crews again if he didn't leave, and ordered Grace to escort Crews back to his cell block.  Crews then asked Pugh to take him to

---

[4] Weeks before, Mitchell had threatened to beat Crews if an officer accused him of being disrespectful.  (Doc. 1 at 6).

the infirmary.  In response, Gaston brandished his mace can and threatened to spray Crews unless he left.  Grace escorted Crews back to his cell block.  Soon thereafter, Clarke came to the cell block, and Crews asked to go to the infirmary.  Clarke told him to ask Grace.  When Crews informed Grace he was having chest pains and needed to go to the infirmary, she responded "[F]*** you, die."  Grace did not respond when Crews repeatedly asked for a sick call request form.  Crews reported the incident via telephone to a hotline and to other officials at Donaldson.  Thus far he has not received any response.  (Doc. 1 at 6-7; *see* Doc. 31 at 2-3).  Crews was subsequently assigned to a different cell block.  (Doc. 31 at 3).

Crews alleges the beatings by Mitchell and Grace caused the following injuries: (l) a swollen temple; (2) soreness in his ribs, right hip, and right knee; (3) soreness, swelling, and difficulty bending his right thumb and middle finger; (4) dizziness; (5) vision problems in his right eye; (6) migraine headaches; (7) elevated blood pressure; and (8) aggravation of a condition causing groin and testicle pain. (*See* Doc. 1 at 8; Doc. 31 at 4).  By late June, Crews began receiving treatment for several of these injuries, and the treatment is ongoing.  (Doc. 31 at 4; *see* Doc. 27-2 at 19-20, 24, 26, 39, 41-43, 46).

### B.   Defendants' Contentions

According to the defendants, Crews was in the shift office on the morning of June 11, 2023.  (Doc. 19-4; Doc. 26-1).  While there, Crews received counseling for

negative behavior; specifically, he had been lewdly exposing himself to female staff. (*See* Doc. 19-2 at 1; Doc. 19-3).  Clarke saw Grace ask Crews a series of questions. (Doc. 26-1).  No physical force was used on Crews.  (Doc. 19-2; Doc. 19-3).  Crews was reassigned to another unit to avoid contact with female staff.  (Doc. 19-2; Doc. 19-3; Doc. 19-4).  Grace escorted Crews to and from the shift office.  (Doc. 19-4).

## IV.   ANALYSIS

As noted in the Order for Special Report, the undersigned interprets Crews as asserting: (1) excessive force as to Mitchell and Grace; (2) failure to protect against Gaston and Clark; and (3) deliberate indifference to medical needs against each defendant.  (Doc. 10 at 2).  The court understands the demand for monetary damages is aimed at the defendants' individual capacities, while any official capacity claims seek injunctive relief.  (*Id.*).  Crews endorsed this understanding.  (Doc. 11).[5]

The defendants' central argument is that Crews is lying and they did not use force against him.  (Doc. 19 at 11, 15, 18-21).[6]  While the defendants assert qualified immunity, their only argument rests on their version of events: that they peacefully counseled Crews and reassigned him to another cell block to avoid contact with

---

[5] Crews also clarified that he seeks injunctions requiring the defendants to comply with applicable regulations and that Mitchell and Grace be terminated from ADOC employment.  (Doc. 28).  The defendants have not asserted any arguments regarding Crews's requests for injunctive relief.

[6] The defendants also assert Eleventh Amendment immunity for official capacity claims seeking monetary damages.  (Doc. 19 at 7; Doc. 26 at 4).  As noted in the Order for Special Report—and endorsed by Crews—any monetary damages claims are aimed at the defendants' individual capacities.  (Doc. 10 at 2; Doc. 11).  Accordingly, Eleventh Amendment immunity is inapplicable.

female staff. (Doc. 19 at 11).[7] Similarly, the defendants' arguments concerning the claims for excessive force,[8] failure to protect,[9] and denial of medical care[10] rely on their competing narrative that no force was used.

As the movants seeking summary judgment, the defendants bear the burden of showing an absence of genuine issues of material fact, even when drawing all reasonable inferences against them and viewing the evidence in a light most favorable to Crews. The defendants' motions fall far short of satisfying this standard. Indeed, they emphasize the factual dispute as to whether they beat Crews, much less whether the beatings were unprovoked—as specifically alleged. Viewed in the light most favorable to Crews, and drawing all reasonable inferences in his favor, his sworn allegations easily overcome the defendants' contradictory facts.[11]

---

[7] Clarke contends he did not witness any use of force but was called away before the conversation ended. (Doc. 26-1; *see* Doc. 26 at 8).

[8] Regarding excessive force, the defendants' only argument is that "there is no evidence, no statements, no reports, no body charts, that the use of force incident occurred." (Doc. 19 at 15).

[9] Regarding failure to protect, the defendants assert Crews did not offer evidence of a risk of harm and that, because no force was used, Crews cannot show the defendants knew of a threat or failed to respond reasonably. (Doc. 19 at 18-19; Doc. 26 at 11-12).

[10] As to denial of medical care, the defendants argue only that they "did not take Plaintiff to the healthcare unit because there was no use of force incident with Plaintiff. Plaintiff's alleged injuries were that he was sore and dizzy, and for some period had difficulty seeing. Yet, Plaintiff's injuries do not appear to be consistent with the alleged force used." (Doc. 19 at 21; Doc. 26 at 13-14).

[11] The defendants repeatedly assert that Crews has offered no evidence to support his claims. (Doc. 19 at 15, 18-19; Doc. 26 at 11-12). The specific, sworn allegations in the complaint and the averments in Crews' affidavits are evidence.

The defendants' remaining arguments fare no better.  The defendants rely on affidavits stating the type of incident alleged by Crews would have resulted in ADOC generating various documents—duty officer reports, incident reports, body charts, and/or disciplinary charges.  (Doc. 19 at 5; Doc. 26 at 3; *see* Doc. 19-6; *see also* Doc. 27-1).  The absence of the expected paperwork may be evidence for the finder of fact to consider but is insufficient to overcome Crews's evidence at summary judgment.

Next, the undersigned disagrees with the defendants' unsupported, conclusory contention that Crews's injuries are inconsistent with the uses of force alleged.  (Doc. 19 at 21; Doc. 26 at 14).  None of these injuries come as a surprise if crediting Crews's sworn allegations and affidavits, as the court must at summary judgment. Moreover, the belatedly filed medical records show that, beginning in June 2023, Crews repeatedly complained of, and received medical treatment for, ailments consistent with the injuries alleged in the complaint: (1) right finger pain and swelling; (2) temple pain; (3) dizziness; (4) and vision difficulties.  (*See* Doc. 27-2 at 19-20, 24, 26, 39, 41-43, 46).  The medical records also memorialize Crews's report that he was assaulted in early June 2023.  (*Id.* at 26).[12]  Accordingly, the defendants' arguments regarding Crews's injuries fail.

---

[12] The contents of these documents undermines defense counsel's statement—offered to explain her failure to attach medical records to the initial special report—that "no evidence" supported Crews's claims.  (Doc. 27 at 1).

## V.    RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** the defendants' pending motions for summary judgment be **DENIED** in their entirety.

## VI.    NOTICE OF RIGHT TO OBJECT

Any party may file specific written objections to this report and recommendation. A party must file any objections with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting. Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments. An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order. In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interest of justice. 11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made

11

and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations.  The district judge must conduct a hearing if required by law.  Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence.  Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination based on that record.  The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  A party may only appeal from a final judgment entered by a district judge.

**DONE** this 12th day of February, 2025.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE

12